# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY BATEMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-424-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Misty Bateman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 3, 1982, and was twenty-nine years old at the time of the administrative hearing (Tr. 33, 127). She completed the eighth or ninth grade, and has worked as a home health aide, cashier, and casino clerk (Tr. 33, 54, 196). The claimant alleges inability to work since October 1, 2010, due to torn rotator cuffs in both shoulders and diabetes (Tr. 196).

**Procedural History**

In July 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 24, 2012 (Tr. 13-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit six hours

in an eight-hour workday, but that she had the additional limitations of no overhead use with the upper extremities, no more than frequent use of the upper extremities for repetitive tasks, no job requirement of driving, no requirement for constant fine visual acuity, and she could perform detailed tasks but not complex work tasks (Tr. 18). The ALJ concluded that the claimant was therefore not disabled because she could return to her past relevant work as a store cashier (Tr. 23).

**Review**

The claimant contends that the ALJ erred by (i) failing to make specific findings in his RFC assessment, specifically as to her postural limitations and her nonsevere impairments of depression and headaches; (ii) by failing to properly assess her credibility; (iii) by failing to fully develop the record; and (iv) by improperly concluding that she could return to her past work as a cashier. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of status post left shoulder arthroscopy and diabetes (Tr. 16). The relevant medical evidence reflects that claimant complained of shoulder pain for a number of years prior to her alleged disability onset date (Tr., *e. g.*, 285). In October 2010, the claimant went to the ER with complaints of a migraine headache and shoulder pain (Tr. 353). Nerve conduction studies in December 2010 did not indicate carpal tunnel syndrome or cervical radiculopathy (Tr. 338).

The claimant presented to Dr. Ronald Schatzman on March 29, 2011, for a consultative examination (Tr. 376). He stated that the claimant would initially not lift her arms above 90 degrees, but went with the full range of motion with encouragement (Tr. 377). He assessed her with a history of shoulder pain and morbid obesity (Tr. 378). On April 26, 2011, a state reviewing physician found that the claimant could perform a full range of medium work (Tr. 386). However, the claimant continued to report pain that was determined to be bursitis and a possible labral tear, and eventually underwent a left shoulder arthroscopy on August 22, 2011 (Tr. 397, 403, 501). Following surgery, she reported continued pain and was given steroid injections but reported a continued stiffness and limited range of motion and only temporary relief with the injections (Tr. 505-509).

On March 7, 2012, the claimant was hospitalized following a possible suicide attempt. She denied suicidal ideation, but a note that was found indicated otherwise (Tr. 460). She was also found to be diabetic at this time, with her blood sugar not under control upon admission (Tr. 460). She was transferred to a behavioral health facility and stayed there two days (Tr. 524-544). Upon discharge, she was diagnosed with major depressive disorder, single episode without psychotic features, moderate; along with borderline diabetes, status post left shoulder surgery secondary to bone spurs (Tr. 542). Upon admission to the behavioral health facility, she was assessed a global assessment of functioning (GAF) score of 19, but given a GAF of 40 upon discharge (Tr. 541-542).

At the administrative hearing, the claimant testified that she was working four hours a day two days a week as a home health aide to two people, that she had recently

asked for more clients but been told none were available, and that her employer was reportedly satisfied with her work (Tr. 33-34, 36). As part of her job, she would do laundry, clean, help with a sponge bath, and perform errands (Tr. 37). She further testified that she had recently applied for a second part-time job as a cashier (Tr. 37). As to her diabetes, she stated that a medication change to Glipizide had helped to regulate her blood sugar, but that her blood sugar went over 200 around three times a week (Tr. 38, 49). She testified that her depression made it difficult for her to do her job, and that she cries a lot but not as much as before she had medication (Tr. 39-40). The ALJ asked if she still had a sense of humor and she replied that she did (Tr. 40-41). In discussing her hospitalization, she testified that she did not believe she needed to be there, but that it had been helpful and that her medications had been helpful (Tr. 50-51). As to her left shoulder, she testified that even after surgery she cannot lift anything over ten pounds, that it hurts during the night, and that pushing and pulling things like the vacuum cleaner and mop "wears me out" (Tr. 42-43). She further testified that she has the same problems with her right hand, including difficulty with both hands "freezing up" when she is preparing a meal (Tr. 43-44). She testified that driving is difficult because she has blurry vision as a side effect of her diabetes, and that her medications make her sleepy (Tr. 44-45). She agreed that she had not been diagnosed with carpal tunnel, but wore braces because she had been warned that it could develop (Tr. 46). As to her headaches, she testified that she gets them two to three days a week (Tr. 48-49).

In his written opinion, the ALJ summarized the claimant's testimony, as well as much of the medical evidence. At step two, the ALJ noted all the claimant's

impairments, and explained that only the shoulder and diabetes were severe impairments. He found her reports of neck and back pain were unsubstantiated by the record, and that her headaches, obesity, wrist problems, and depression were nonsevere (Tr. 16-23). He did not discuss her nonsevere impairments at step four. At step four, the ALJ assigned little weight to the opinions of the state physicians, which were submitted prior to her arthroscopy, but found she was nevertheless not disabled because she could still perform light work, including her past work as a cashier (Tr. 22-23). The ALJ then found although the claimant was not performing as SGA, her job indicated that she was not as disabled as alleged. He then found her not credible, and determined that she was not disabled (Tr. 18-23).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Additionally, "the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Here, the ALJ assigned little weight to the state agency physician opinions that the claimant could perform medium weight, but cited no medical evidence that the claimant could perform light work, either. The ALJ indicated that he assigned the state physician opinions little weight "in light of the subsequently received evidence that was received at the hearing level along with the testimony presented at the hearing" (Tr. 23). But the

ALJ pointed to no evidence that the claimant could occasionally lift up to twenty pounds and did not explain why he found so when the claimant's hearing testimony (that he credited)—along with a written Function report—indicated that she could lift no more than ten pounds (Tr. 42, 175).  Unfortunately, he provided no basis for, nor discussion of, those differences and his reasons for why his findings would differ from opinions that he assigned great weight.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") [citation omitted].

Furthermore, it is true that because the ALJ found that the claimant suffered from the severe impairments of left shoulder status post arthroscopy and diabetes, any failure to find the claimant's headaches, depression, and obesity severe at step two is ordinarily harmless error; nevertheless, the ALJ *is required* to consider the effects of the impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523).  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis

for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ failed to account for the claimant's nonsevere impairments in assessing her RFC. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to refer to evidence supporting his RFC findings, as well as failed to properly account for the claimant's non-severe impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's

RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**